IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGE G. SPOTTSWOOD, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 10-0109-WS-B |
| ) | |
| STEWART TITLE GUARANTY ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on plaintiffs' Motion to Remand (doc. 6). The Motion has been briefed and is now ripe for disposition.[1]

**I.    Relevant Background.**

On February 2, 2010, plaintiffs, George and Amy Spottswood, filed their Complaint against defendant, Stewart Title Guaranty Company ("Stewart"), in the Circuit Court of Baldwin County, Alabama. In this action, the Spottswoods brought a claim against Stewart pursuant to a title insurance policy (the "Policy") that Stewart had issued in plaintiffs' favor on March 23, 2005. According to the Complaint, the Policy's coverage limits were $1.8 million.

The Policy applied to certain real property in Baldwin County that the Spottswoods had purchased in March 2005.[2] The Warranty Deed conveyed to the Spottswoods in that transaction specified that the parcel included 56.53 feet, more or less, of frontage on Mobile Bay. Shortly

---

[1]    The briefing schedule (doc. 8) authorized plaintiffs to file a reply brief in further support of their Motion on or before March 31, 2010. By not filing a reply, plaintiffs have elected not to be heard in rebuttal to the Response (doc. 9) submitted by defendant.

[2]    Although the Complaint does not specify the precise location of that parcel, accompanying exhibits reflect that the Spottswoods' property is located in an exclusive residential area on Scenic Highway 98 in Point Clear, Alabama. (Complaint, Exh. 2, ¶ 2.) An Alabama appellate court has described this lot as being "located along the eastern shore of Mobile Bay approximately one mile south of the Grand Hotel at Point Clear." *Spottswood v. Reimer*, --- So.3d ----, 2009 WL 2195888, *1 (Ala.Civ.App. July 24, 2009).

after the Spottswoods purchased that property, however, their immediate neighbors to the south (who are not parties to these proceedings) brought a declaratory judgment action (the "*Reimer* Action") against the Spottswoods in Baldwin County Circuit Court contesting the precise location of the common boundary line separating their respective parcels. The Spottswoods allege in their Complaint that the *Reimer* Action was decided adversely to them, in that "the trial court decree awarded to the Spottswoods a parcel of real property having approximately 49.50 feet of frontage on Mobile Bay, rather than frontage of 56.53 feet." (Complaint, ¶ 7.) According to the Spottswoods, this aspect of the trial court's ruling was affirmed on appeal.[3]

Based on the Spottswoods' loss of more than seven feet of Mobile Bay frontage pursuant to the *Reimer* Action, the Spottswoods' Complaint alleges a cause of action for compensatory damages against Stewart under the Policy. In particular, the Spottswoods seek to recover from Stewart on the grounds that title to their property was "vested other than as stated" in the Policy, that their property was "subject to a defect in or encumbrance on said title," and that during the pendency of the *Reimer* Action (from June 2005 through July 2009) "the title to the Spottswood property has been unmarketable." (Complaint, ¶ 9.) The Complaint does not purport to quantify the compensatory damages sought.

On March 3, 2010, Stewart removed this action to this District Court, predicating federal subject matter jurisdiction on 28 U.S.C. § 1332. Specifically, Stewart maintains that there is complete diversity of citizenship between the parties, inasmuch as plaintiffs are Alabama citizens while Stewart is a Texas corporation with its principal place of business in Texas. (Doc. 1, ¶¶ 7-8; Martin Decl., ¶ 7.) As to the $75,000 jurisdictional threshold, Stewart asserts that the loss of more than seven feet of Mobile Bay frontage (*i.e.*, the injury for which the Spottswoods seek recompense under the Policy) "would certainly result in damages in excess of $75,000" in the form of diminished valuation of plaintiffs' property. (Doc. 1, ¶ 12.) To demonstrate that the amount in controversy is satisfied, Stewart filed contemporaneously with its Notice of Removal

---

[3] Review of the published opinion of the Alabama Court of Civil Appeals in the *Reimer* Action confirms this characterization. The Alabama appellate court noted that the boundary line established by the trial court "results in the Reimer lot having a bay frontage of 61.3 feet while the Spottswood lot has a bay frontage of 48.9 feet," and specifically affirmed that determination. *See Reimer*, 2009 WL 2195888 at *8.

a report from Edmund G. Eslava III of The Appraisal & Consultant Group ("ACG") dated February 26, 2010. The ACG report set forth specific expert opinions utilizing valuation techniques for property in that geographic area and actual data from comparable sales, as to the impact of the Spottswoods' loss of 7.03 feet of Mobile Bay frontage on the value of their property. (*See* doc. 1, Exh. 2, Exh. A at 8.)

Plaintiffs have now filed a Motion to Remand in which they seek remand of this action to state court for lack of federal subject matter jurisdiction.

## II.  Analysis.

### A.  *Legal Standard for Motion to Remand.*

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction. *See Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).[4]

There being no federal question presented in the Complaint, Stewart's sole basis for removal was diversity of citizenship. Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Darden v. Ford Consumer Finance Co.*, 200 F.3d 753, 755 (11th Cir. 2000) (to qualify for diversity jurisdiction, complaint must establish "complete diversity of the parties' citizenship and an

---

[4]  *See also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand); *Newman v. Spectrum Stores, Inc.*, 109 F. Supp.2d 1342, 1345 (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

amount in controversy exceeding $75,000"); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (similar). "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction ... [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted).

### B. The Amount in Controversy.

Plaintiffs' Motion to Remand is framed strictly in terms of the sufficiency of proof as to the amount in controversy prong of the § 1332 jurisdictional test.[5] The Spottswoods do not represent (much less offer evidence) that the amount in controversy is actually below the $75,000 threshold, nor do they deny that they are claiming damages of at least that amount. Instead, the thrust of the Motion is plaintiffs' contention that defendant has failed to establish the jurisdictional amount by a preponderance of the evidence, but is improperly relying on sheer speculation as to amount in controversy.

It is well established that "in the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007); *see also Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp.2d 1279, 1283 (S.D. Ala. 2009) ("In a removal action, the party asserting jurisdiction has the burden of establishing proof of jurisdiction by a preponderance of the evidence."); *Roe v. Michelin North America, Inc.*, 637 F. Supp.2d 995, 998 (M.D. Ala. 2009) ("where damages have not been specified by the plaintiff, the defendant must show by a preponderance of the evidence that the $ 75,000 amount-in-controversy requirement is met"). The Eleventh Circuit has explained that "[i]f the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must remand." *Lowery*, 483 F.3d at 1211. Moreover, because "the district court has before it only the limited universe of evidence

---

[5] Compliance with the diversity of citizenship requirement is clearly set forth in the Notice of Remand and in the Complaint. There is no reason to believe that complete diversity between the parties is lacking, and plaintiffs do not suggest otherwise. Accordingly, the Motion to Remand turns solely on whether the amount in controversy element of § 1332 is satisfied.

available when the motion to remand is filed – i.e., the notice of removal and accompanying documents," if that evidence is inadequate to establish jurisdiction, then "neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Id.* at 1214-15 (footnotes omitted). The law is clear that "the existence of jurisdiction should not be divined by looking to the stars." *Id.* at 1215; *see also Bowen v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1257470, *1 (M.D. Fla. Mar. 29, 2010) ("Conclusory allegations that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such assertion, are insufficient.").

In reliance on these principles, the Spottswoods advance a pair of arguments to support their contention that remand is warranted. First, plaintiffs contend, citing *Lowery*, that defendant's exhibits appended to its Notice of Removal cannot be considered at all because they were not "received from Plaintiffs." (Doc. 6, at 4.) This reasoning embraces a common misunderstanding of *Lowery*. Contrary to plaintiffs' suggestion, *Lowery* does not categorically bar a removing defendant from submitting outside evidence of damages contemporaneously with its notice of removal to satisfy its burden of proving jurisdiction by a preponderance of the evidence.[6] In fact, the *Lowery* panel recognized that "[a] defendant would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff" because, in those circumstances, "the underlying substantive law provides a rule that allows the court to determine the amount of damages." *Lowery*, 483 F.3d at 1214 n.66.[7] Such is the case here. The Spottswoods' Complaint

---

[6] Had *Lowery* so declared, that proposition would have been at odds with prior Eleventh Circuit precedent recognizing that if it is not facially apparent from the complaint that the jurisdictional amount is in controversy, "the court may consider facts in the removal petition, and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citations and internal quotation marks omitted); *see also Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).

[7] Another example of permissible outside evidence is found in a post-*Lowery* unpublished decision styled *Kok v Kadant Black Clawson, Inc.*, 2008 WL 1823336 (11th Cir. Apr. 24, 2008). In *Kok*, the plaintiff brought a state-law employment discrimination claim and demanded back pay, front pay and other damages. The defendant removed the case to federal court pursuant to 28 U.S.C. §§ 1332 and 1446, following which the plaintiff filed a motion to remand based on the jurisdictional amount. In opposition to that motion, the employer submitted

is predicated on the notion that the Policy entitles them to recover from Stewart compensatory damages representing the diminution in value resulting from the title defect that reduced the Spottswoods' parcel by more than seven feet of Mobile Bay frontage. The reduction in that parcel's value caused by the modification of its frontage from 56.53 feet to 49.50 feet is an objective figure as to which Stewart is entitled to present evidence with its Notice of Removal, regardless of the source of that evidence. It would be a strange result, indeed, if *Lowery* were to be construed as forcing a removing defendant to prove jurisdiction by a preponderance of the evidence, even as it categorically foreclosed defendants from being able to present objective

---

the plaintiff's W-2 form and an affidavit documenting his gross pay and benefits, from which his back pay entitlement (if he were to prevail) could be definitively computed as exceeding $75,000. Based on this evidence, the *Kok* panel found that "[t]he district court correctly concluded that [the defendant] established that, at the time of removal, [the plaintiff]'s complaint for damages exceeded the amount in controversy required for diversity jurisdiction." *Id.* at *1; *see also Webb v. CUNA Mut. Group*, 2010 WL 366688 (S.D. Ala. Jan. 22, 2010) (denying motion to remand where plaintiff sought unspecified life insurance proceeds, defendant appended life insurance policy to notice of removal, and policy provided for benefits of $77,000); *Boland v. Auto-Owners Ins. Co.*, 2009 WL 4730681, *3-4 (M.D. Ala. Dec. 7, 2009) (considering pre-suit papers showing "specific and reasonable estimates" of lost rental income for each piece of property for which plaintiff sought insurance benefits, and finding jurisdictional amount satisfied, even though complaint did not specify amount in controversy); *Wiltew v. Parker*, 2009 WL 3615041, *1 (S.D. Ala. Oct. 30, 2009) (finding that defendant's declaration concerning amount in controversy may properly be considered in remand analysis, where declaration documented the value of three different bids which formed the basis of the plaintiff's claims); *La Rocca v. Stahlheber*, --- F. Supp.2d ----, 2009 WL 3667068, *2-3 (S.D. Fla. Oct. 23, 2009) (denying motion to remand where defendant submitted medical reports showing a low-end estimate of $2,000 in future medical bills per year, plus actuarial tables showing a life expectancy for plaintiff of approximately 38 years, such that amount in controversy was at least $76,000); *Dutton v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2985685, *2 (M.D. Fla. Sept. 15, 2009) ("If a district court cannot determine the amount of controversy from the face of the complaint, it should consider the allegations in the notice of removal and any summary judgment type evidence that the amount in controversy exceeds $75,000.00."); *Gleason v. Roche Laboratories, Inc.*, 2009 WL 728531, *2 n.2 (M.D. Fla. Mar. 19, 2009) (considering defendant's affidavits concerning plaintiff's past wages as relevant evidence to establish the amount in controversy, and finding nothing in *Lowery* precluding it from doing so). The point is that when the value of a plaintiff's claim is objectively verifiable using evidence that is both available to the defendant (such that evidence of damages is not within the sole purview of the plaintiff) and tied directly to the plaintiff's case (*i.e.*, evidence other than jury awards from purportedly similar cases), the defendant may present that evidence contemporaneously with its notice of removal regardless of whether the plaintiff is the source of that evidence.

evidence specific to the plaintiff's claims to demonstrate the amount in controversy.[8]

Second, plaintiffs deride Stewart's amount-in-controversy argument as "only a purely speculative statement that if the Plaintiffs lost seven feet of frontage on Mobile Bay, the value of their loss would exceed $75,000." (Doc. 6, at 4.)[9] But closer inspection of defendant's evidentiary showing belies this line of criticism. The ACG report, which was prepared by a licensed, certified real estate appraiser, included an opinion that "generally sites along the bay

---

[8] More generally, the critical point that defeats the Spottswoods' "other paper" objection (*i.e.*, their contention that the exhibits to the Notice of Removal are improper because they did not originate from plaintiffs) is that the rule in *Lowery* followed from a set of assumptions that do not exist here. In discussing the "other paper" requirement, the *Lowery* panel explained that "the removing defendant **generally** will have no direct knowledge of the value of the plaintiff's claims" and that "[t]o the extent the defendant does obtain knowledge of the claims' value, it will **generally** come from the plaintiff herself in the form of information in an 'other paper.' ... In the absence of such a document, the defendant's appraisal of the amount in controversy ... will **ordinarily** not provide grounds for his counsel to sign a notice of removal in good faith." 483 F.3d at 1213 n.63 (emphasis added). But this action is not the "ordinary" case described in *Lowery*. Here, the Spottswoods seek to recover under the Policy for the diminution in value of their real property caused by the divergence of the property description in their warranty deed and their actual property holding to the tune of seven-plus feet of Mobile Bay frontage. That diminution in value is not a dollar figure uniquely within the Spottswoods' purview, but is instead an objective market fact ascertainable by any qualified real estate appraiser. Thus, unlike the ordinary/usual/typical scenario addressed by *Lowery*, Stewart was not beholden to the Spottswoods for all valuation information pertaining to their claim. The Spottswoods say they are owed compensatory damages under the Policy because their title to the property was vested other than as stated in the warranty deed, with the result that they were deprived of seven feet of frontage they thought they were acquiring when they purchased the property. Stewart properly submitted the ACG report with its Notice of Removal as evidence of the amount of damages plaintiffs had suffered due to the defective title, inasmuch as that report quantifies the diminution in value to plaintiffs' property resulting from the title defect that animates their claim against Stewart under the Policy.

[9] Significantly, plaintiffs do not disclaim an intent to recover from Stewart in this litigation for the diminution in property value resulting from the loss of 7+ feet of Mobile Bay frontage. The language of their Complaint strongly suggests that this is, in fact, their theory of recovery, inasmuch as it stresses that the Spottswoods ultimately received "a parcel of real property having approximately 49.50 feet of frontage on Mobile Bay, rather than frontage of 56.53 feet." (Complaint, ¶ 7.) All indications from the Complaint are that this is the harm for which the Spottswoods seek recompense under the Policy, and they have not suggested otherwise in their Motion to Remand.

are both priced and purchased on the basis of their bay front footage." (Doc. 1, Exh. 2, Exh. A, at 8.) Based on that foundation, the ACG report examined several comparable sales, including three properties "located directly south of the Spottswood property [that] were all vacant sites with 91 ± front feet (FF) on the bay." (*Id.*) For those three comparables, the ACG report noted, the average sales price was $16,850 per front foot. (*Id.*)[10] In light of that fact, the ACG report concluded with an express "opinion that the loss of the 7.03 feet of Mobile Bay frontage will reduce the value of the Spottswood's [*sic*] property by at least $75,000." (*Id.*) If, as the ACG report demonstrates, real property in the vicinity of the Spottswoods' parcel is bought and sold on the basis of its front footage and the average recent sales price for comparable parcels is $16,850 per front foot, then simple arithmetic confirms that a loss of more than seven front feet would be accompanied by a diminution in value of greater than $100,000 (inasmuch as $16,850/foot x 7 feet = $117,950). This figure is well in excess of the $75,000 amount needed to give rise to federal diversity jurisdiction.

In short, defendant's statement that the amount in controversy is satisfied is not purely speculative. Stewart is not asking this Court to divine the existence of jurisdiction by looking to the stars, or engaging in unbridled guesswork and reckless conjecture to reach a preordained conclusion. To the contrary, Stewart has come forward – contemporaneously with its Notice of Removal – with an expert report that is both concrete and directly on-point, providing a valid evidentiary basis for defendant's contention that the amount in controversy in this lawsuit objectively exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiffs have made no attempt to rebut that expert report, or to suggest that the jurisdictional amount is not actually in dispute here; therefore, the ACG report is the only record evidence of valuation at this time. In the Court's view, this showing is sufficient to satisfy Stewart's burden of establishing the presence of the necessary amount in controversy (and, consequently, removal jurisdiction) by

---

[10] The record reflects that when the Spottswoods purchased their property in March 2005, they paid $1.8 million for what they thought was 56.53 feet of Mobile Bay frontage, or $31,843 per front foot. (Doc. 1, Exh. 2, Exh. B, at 2.) As such, the comparable sales appear to represent low-end estimates of the valuation of front footage on the Spottswoods' parcel.

a preponderance of the evidence.[11]

## III. Conclusion.

For all of the foregoing reasons, the Court concludes that defendant has satisfied its burden of showing the existence of the jurisdictional amount by a preponderance of the evidence. Accordingly, removal was proper and federal subject matter jurisdiction properly lies pursuant to 28 U.S.C. § 1332. Plaintiffs' Motion for Remand (doc. 6) is **denied**.

DONE and ORDERED this 15th day of April, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[11] Plaintiffs also advance two collateral challenges to the ACG report, maintaining that this exhibit should not be considered because it (a) is unauthenticated hearsay and (b) rests on comparables that are too temporally remote to have value. As to the former objection, it is true, of course, that authentication of an exhibit is a condition precedent to admissibility. *See* Rule 901, Fed.R.Evid. But this is not an evidentiary hearing. The Court is not deciding whether or not to admit the ACG report into evidence, but is simply evaluating whether to consider it for purposes of a preliminary ruling. Plaintiffs identify no authority to support their apparent belief that strict compliance with all prerequisites of admissibility is necessary before an exhibit may be considered on a motion to remand. Courts in analogous circumstances have held otherwise. *See, e.g., Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218, 1223 (S.D. Ala. 2008) ("The general rule in this Circuit is that parties' exhibits may be considered for purposes of pretrial rulings so long as they can be reduced to admissible form at trial.") (citations omitted). The Spottswoods' hearsay objection fails for the same reason. Because all indications are that the ACG report can be reduced to admissible, non-hearsay form at trial, it will not be excluded from consideration on the Motion to Remand as hearsay. As to the latter objection, the comparables in question all occurred within 24 months preceding removal of this action, with the most recent being dated March 2009. Plaintiffs provide nothing other than the unvarnished conclusory statement of their counsel that those comparable sales are too remote in time to be useful in calculating the diminution in the Spottswoods' property value arising from the post-purchase redrawing of boundary lines to eliminate seven feet of plaintiffs' Mobile Bay frontage. This bald assertion lacks any indicia of reliability, and appears to consist of nothing more than counsel's subjective, lay beliefs concerning real estate appraisal practices in Point Clear, Alabama; therefore, it will not be credited. Accordingly, the Court rejects the Spottswoods' hearsay, lack of authentication, and remoteness objections to the ACG report appraising the diminution in value of plaintiffs' property arising from the loss of bay front footage (*i.e.*, the injury that animates their claims against Stewart in this litigation).